**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**BARTLET PACKAGING**
**LIMITED LIABILITY COMPANY**,
a division of Pro Mach, Inc.

    Plaintiff,
v.                                            Case No. 8:24-cv-00253-WFJ-NHA

**RONALD (SCOTT) GRAVES**,

    Defendant.
_____/

**TEMPORARY RESTRAINING ORDER AND**
**ORDER FOR INSTANTER SERVICE**

This matter is before the Court upon the Motion of Plaintiff Bartlet Packing Limited Liability Company, a division of Pro Mach, Inc. ("Plaintiff") for a Temporary Restraining Order ("TRO") against Defendant Ronald (Scott) Graves ("Defendant") (Dkt. 2). Due to the emergency nature of the relief requested by Plaintiff, the Court finds it appropriate to decide the Motion on the papers and without a hearing.

**BACKGROUND**

Based upon the Verified Complaint and the Motion, and only for the purposes of the Motion, the Court makes the following preliminary findings:

    1.    Plaintiff hired Defendant in May 2021 to serve as its Regional Sales Manager for the West United States and Canada, and he filled that role from May

of 2021 until October 26, 2023, leading sales of Plaintiff's products and some products of other packing divisions within Pro Mach, Plaintiff's parent company.

2. Pursuant to his employment with Plaintiff, Defendant: (1) managed and developed key customer relationships; (2) was privy to product development information; (3) had knowledge of pricing and margin information, contract terms, manufacturing methods and customer preferences; (4) was involved in developing marketing and growth strategies; (5) gained knowledge of the competitive strengths and weaknesses of Plaintiff's line of products; and (6) was exposed to Plaintiff's confidential, proprietary, and trade secret information.

3. When he accepted the position of Regional Sales Manager, Defendant signed a "Confidentiality & Secrecy Agreement, Agreement Not to Solicit, and Agreement Not to Compete" ("Agreement").

4. By signing the Agreement, Defendant made certain covenants, including: (1) not to directly or indirectly disclose or use Plaintiff's confidential information, except as required to conduct Plaintiff's business; (2) upon termination of his employment, to submit to a separation interview and to return to Plaintiff all materials in his possession relating to or within the scope of Plaintiff's current or future business; (3) not to be employed by Plaintiff's competitors for a period of two years following termination of his employment with Plaintiff; (4) not to interfere with Plaintiff's business relationship with any of its employees, or

induce or attempt to induce any of Plaintiff's employees to terminate his/her employment with Plaintiff; (5) not to interfere with Plaintiff's business relationship with any of its customers, suppliers, licensees, licensors, franchisees, or other business relations, or to induce or attempt to induce any of these to do business with Defendant or an employer of Defendant, or to cease doing business with Plaintiff; (6) that the Agreement would be governed by the laws of Florida.

5. In October 2023, Defendant asked Plaintiff to be released from the Agreement so that he could accept employment with Plaintiff's direct competitor.

6. Plaintiff denied Defendant's request, and Defendant expressed his intent to continue as Plaintiff's employee; however, on October 26, 2023, Defendant resigned.

7. In January 2024, Plaintiff's direct competitor, Mespack, announced via press release that Defendant was its new Product Sales Manager for West United States and Canada.

8. While employed as a Product Sales Manager for Mespack, Defendant quoted a pre-made pouch machine ("PMP") that directly competes with a PMP sold by Plaintiff and, perhaps, a PMP sold by another Pro Mach company; additionally, Defendant knew about Plaintiff's PMP, the other Pro Mach PMP, and the pricing of both during his prior employment with Plaintiff.

## ANALYSIS

To secure a TRO, the moving party must establish:

(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.

*Schiavo v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). This Court has jurisdiction based on diversity of the parties and the amount in controversy, as well as the claim brought under the Defend Trade Secrets Act (DTSA), 18 U.S.C. 1836 *et seq.* 28 U.S.C. §§ 1331, 1332.

A. *Substantial Likelihood of Success on the Merits*

Plaintiff has demonstrated a substantial likelihood of success on the merits of its claims for breach of contract and misappropriation of trade secrets.

Under Florida law, a non-compete agreement is enforceable if: (1) it is set forth in writing; (2) it is "reasonable in time, area, and line of business"; and (3) it protects one or more legitimate business interests. Fla. Stat. § 542.335; *Proudfoot Consulting Co. v. Gordon*, 576. F.3d 1223, 1231 (11th Cir. 2009).

On May 17, 2021, Defendant signed the Agreement, which included a covenant that he would not work for Plaintiff's competitor for a period of two years after termination of his employment with Plaintiff. Dkt. 1-1 at 4, 6. The Agreement was formed "in light of" the confidential information to which Defendant would be privy as Plaintiff's employee. Dkt. 1-1 at 2–4. The

4

confidential information protected by the agreement included trade secrets and substantial customer relationships. *Id.* This information is a legitimate business interest under the Florida non-compete statute. Fla. Stat. §§ 542.335; 688.002(4). Further, as a prohibition on working for Plaintiff's competitors for two years, the Agreement is reasonable in time and line of business. *See Capelouto v. Orkin Exterminating Co.*, 183 So. 2d 532, 534 (Fla. 1966). Because the Agreement did not contain any geographic limitation, the Court may supply a reasonable geographic scope. *Proudfoot*, 576 F.3d at 1231.

Defendant served as Plaintiff's Regional Sales Manager for the West United States and Canada. Dkt. 1 ¶ 7. He was hired to work as a competitor's Product Sales Manager for West United States and Canada. *Id.* ¶ 17. "West United States" was not specifically defined in the instant Complaint or Motion. To the extent the geographic area of Defendant's employment with Plaintiff overlaps with his new territory under Plaintiff's competitor, the Court finds the Agreement reasonable in geographic scope.

The Agreement is in writing, reasonable in time, geography (as modified by the Court), and line of business, and formed to protect a legitimate business interest. It is enforceable. Further, Plaintiff alleges that Defendant is working for "a direct competitor . . . in the exact same role, serving the exact same territory."

5

Based on these allegations, the Court finds there is a substantial likelihood of success on the merits of Plaintiff's breach of contract claim.

Under the Florida Uniform Trade Secrets Act (FUTSA), Fla. Stat. § 688.001 *et seq.*, and the DTSA,[1] a trade secret is information that "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from" the information. 18 U.S.C. § 1839(3). A trade secret must be the subject of reasonable effort to maintain its secrecy. Fla. Stat. § 688.02. A trade secret is misappropriated when it is impermissibly disclosed by a person who has a duty to maintain its secrecy. *Id.*

In his role as Regional Sales Manager, Defendant had access to numerous of Plaintiff's trade secrets, including products, marketing plants, pricing information, and sales strategies. Dkt. 1 ¶ 33. Plaintiff asserts that it takes "substantial measures" to secure this information. *Id.* ¶ 32. By signing the Agreement, Defendant covenanted not to unnecessarily disclose Plaintiff's confidential information. Dkt. 1-1 at 2–3. But Plaintiff contends that Defendant relied upon confidential information learned through his employment with Plaintiff to set a competing quote for a competing product in his new role as Sales Manager for

---

[1] DTSA and FUTSA can be analyzed together. *M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1353–54 (S.D. Fla. 2016).

6

Plaintiff's competitor. *Id.* ¶ 18. Based on these alleged facts, the Court finds there is a substantial likelihood of success on the merits of Plaintiff's misappropriate of trade secrets claims.

B. *Irreparable Injury, Balance of Harms, Public Interest*

Irreparable injury is presumed when trade secrets are misappropriated or a covenant not to compete is breached. *Freedom Med., Inc. v. Sewpersaud*, 469 F. Supp. 3d 1269, 1278 (M.D. Fla. 2020). Further, Plaintiff has expended "substantial time, labor, and money" in research and development, and has taken "substantial measures" to protect the resultant confidential information. Dkt. 1 ¶¶ 31, 32. The potential injury to Plaintiff outweighs any harm to Defendant of doing "that which he willingly promised" to do in the Agreement. *Freedom Med.*, 469 F. Supp. at 1279. Finally, courts applying Florida law routinely find that the public interest is served by protecting confidential information and enforcing reasonable, freely-entered non-compete agreements. *Id.* (collecting cases). Neither the Complaint nor the Motion suggest any public policy requirements that "outweigh the need to protect [Plaintiff's] legitimate business interest." Fla. Stat. § 542.335(1)(i).

The Court therefore grants a Temporary Restraining Order as follows:

A. The Court enters a Temporary Restraining Order immediately enjoining and restraining Defendant and all persons acting in concert with him, including Mespack and affiliates, from directly or indirectly using, disclosing

7

copying or transmitting Plaintiff's confidential or trade secret information for any purpose (including, without limitation, engaging in competition with Plaintiff or soliciting Plaintiff's customers, vendors, consultants, or employees);

      B.     The Court enters a Temporary Restraining Order requiring Defendant to abide by the terms of the signed Agreement attached to Plaintiff's Complaint (Dkt. 1-1). Defendant is immediately enjoined and restrained from directly or indirectly engaging in competition with Plaintiff. Defendant is enjoined and restrained from providing any services to Mespack or any of its parent or affiliated companies that are in competition with Plaintiff and from soliciting any current or former of Plaintiff's customers, vendors or employees. Mespack and affiliates are enjoined from encouraging or aiding in the violation of the Agreement;

      C.     The Court requires Defendant and all persons acting in concert with him to return to Plaintiff within seventy-two (72) hours of the Court's Order all originals, copies, or other reproductions in any form whatsoever, of any record or document containing, in whole or in part, any confidential information belonging to Plaintiff;

      D.     Plaintiff's requests relating to Defendant's personal electronic devices are denied without prejudice; and

      E.     Plaintiff's request for attorneys' fees, costs, and other expenses is carried with the case; and

  F. Plaintiff must serve Defendant with process, including a copy of all pleadings in this case and this Order, and file proof of same. Additionally, Plaintiff must serve Mespack notice of this Order and of the below-referenced hearing, by serving a copy of all pleadings in this case and this Order, and file proof of the same. <u>This must be done instanter</u>.

  G. Plaintiff will post a $35,000 bond with the Clerk before 5:00 p.m. on February 2, 2024.

  This Temporary Restraining Order shall remain in effect for fourteen (14) days and expire on February 12 at 4:00 p.m., or until further order of this Court. The Court will conduct a hearing on preliminary injunctive relief on **February 9, 2024, at 2:00 p.m.** in Courtroom 15B, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida 33602.

  **DONE AND ORDERED** at Tampa, Florida, on January 29, 2024.

          */s/ William F. Jung*
          **WILLIAM F. JUNG**
          **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record